CARAWAY, J.
| jThe trial court granted a partial summary judgment in favor of the defendant employee finding a noncompetition clause in an employment agreement unenforceable for failure to specify parishes. Finding that the appellant failed to produce factual support in opposition to appellees’ motion to establish that it could satisfy its eviden-tiary burden to enforce the clause, we affirm.

Facts

Elite Coil Tubing Solutions, LLC (“Elite”), a limited liability company established in 2006, has its principal place of business in Caddo Parish. The business services the oilfield, including coil tubing services. Elite hired Weldon Guillory on June 15, 2006, as its Manager of Operations. Guillory worked in that capacity until his resignation on October 15, 2010.
Upon his employment, Guillory and Elite entered into an employment agreement which included the following paragraph (hereinafter the “Noncompetition Covenant”):
11. Restrictive Covenant. The business of the Company is coil tubing. During the term of this agreement and for the period of two years after the termination or expiration of the Agreement, the Employee shall refrain within a radius of 200 miles from the [all] places of the Company’s business, from directly o[r] indirectly, owning, managing, operating, controlling, being employed by, participating in, or being connected in any business similar to the Company within that same area during that same period. After termination or expiration of the Agreement, these restrictions on competition and solicitation [1] shall not be applicable in any area within which the Company permanently ceases to carry on a like business. In the event of the Employee’s actual or threatened breach of this paragraph, the Company shall be entitled, without the |2necessity of a bond, to a temporary restraining order and injunction restraining the Employee from violating its provisions. Nothing in this Agreement shall be construed to prohibit the Company from pursuing any other available remedies for such breach or threatened breach, including the recovery of damages from the Employee.
In the event the Company is required to hire an attorney to enforce, enjoin or defend this restrictive covenant or any other term of the Agreement, the Employee shall reimburse the Company for the reasonable attorney’s fees and costs associated therewith.
Because of the fact that it would be difficult and impractical to calculate and ascertain the damage the Company would sustain from the breach of this covenant by Employee, the parties here *863 to assess and fix as liquidated damages for any breach, the sum of TWO HUNDRED FIFTY THOUSAND DOLLARS AND NO/lOO ($250,000) DOLLARS. Employee further agrees to pay such liquidated damages along with all costs and expenses incurred by the Company, including reasonable attorney’s fees, in enforcing the payment of such damages. In the event Employee breaches this covenant, and in the further event Employee pays the sum of TWO HUNDRED FIFTY THOUSAND DOLLARS AND NO/100 ($250,000) DOLLARS and all the costs therewith, Employee shall therefore be permitted to compete and solicit within the above-specified geographic area.
The employment agreement also contained a Disclosure of Information clause which prohibited Guillory from disclosing Elite’s customer list to anyone. It did not include a severability/reformation clause.
Elite also hired Bobby Gill on July 15, 2008, and he worked as Elite’s controller until his resignation on December 18, 2010. Gill executed no employment agreement with Elite during his employment.
After leaving the employment of Elite, both Guillory and Gill began working for HCC-High Capacity Coil, LLC (“HCC”). The limited liability company had its principal place of business and headquarters located in Bossier Parish, some 25 miles from Elite’s headquarters. HCC is allegedly a direct competitor with Elite in the business of coil tubing services.
LOn March 24, 2011, by letter, Elite requested that both Guillory and Gill cease any competitive activities. When no response was forthcoming, Elite instituted suit against the two former employees and HCC (“the defendants”) on June 16, 2011. In relevant part, the suit alleged that HCC was “created through a partnership of Gill and Guillory, who each hold membership and ownership interests in the company.” Gill and Guillory deny these facts. Further, Elite alleged that Guillory contacted numerous vendors during his employment with Elite and gathered Elite’s customer price and equipment lists and confidential business records. Elite claimed that Gill and Guillory “contacted numerous employees of plaintiff and used wage information from records to solicit away and hire new employees.” Elite urged that Gill and Guillory “contacted vendors and acquired equipment used to directly compete with plaintiff.” Elite also alleged that during their employment, Gill and Guillory discussed establishing a competing business and that Gill continued to work for Elite and failed to disclose his partnership with Guillory. Elite asserted that Gill and Guil-lory “secured assets including coil tubing units to directly compete with plaintiff in Parishes in Louisiana where plaintiff conducts business and operations.” Elite urged that both Gill and Guillory “knew each Parish in Louisiana where plaintiff conducted and conducts business and operations due to their positions held in plaintiffs business” and that the “business operations and solicited work by defendants, Guillory and Gill and HCC, is well within the 200-mile radius of plaintiffs business operations and base in Caddo |4Parish.” Additionally, the suit alleged defendants’ violation of Louisiana Unfair Trade Practices law.
Elite sought damages, including the above-noted liquidated damages provided for in the employment agreement, specific performance under the employment agreement, declaratory judgment declaring the validity of the employment agreement, and injunctive relief for all claims. Nevertheless, no preliminary injunction proceeding was conducted.
On July 6, 2011, the defendants filed a motion for partial summary judgment *864 seeking dismissal of any claims arising from the breach of the Noncompetition Covenant for failure to comply with La. R.S. 23:921 because no parishes were specified. In support of the partial summary judgment, the defendants included the affidavits of Gill and Guillory who admitted that they worked for Elite and were currently employed by HOC. Both denied being members of HCC. Gill stated that he did not execute a restrictive covenant with Elite and Guillory admitted that he did. The defendants also attached a copy of Guillory’s employment agreement in support of the partial summary judgment.
Elite opposed the summary judgment contending that the defendants established advertising in all locations where it conducted business and had formed an internet web site for purposes of spreading information, advertising and directly competing with plaintiff in areas located within a 200-mile radius of plaintiffs operations. Elite also argued that the restrictive Non-competition Covenant complied with La. R.S. 23:921 because at the time of its execution, it was impossible to anticipate in which | ^parishes Elite might do business. Attached in opposition to the summary judgment was the affidavit of James Hardy, the sole owner and member of Elite, who offered only that Elite “did business in certain Parishes and Counties, in Louisiana and Texas.”
The partial summary judgment came for hearing on September 22, 2011. After hearing the arguments of counsel, the trial court granted partial summary judgment in favor of the defendants stating as follows:
I just wanted to make it clear again that the only thing before us today is what’s in Paragraph 11, and I think that everybody would acknowledge that in the Second Circuit as of now that Paragraph 11 does not comply with 23:921C, and so it is unenforceable, and so any request for injunctive relief or declaratory judgment or the request for liquidated damages under the provisions of that paragraph the defense should prevail on its motion for partial summary judgment.
This appeal by Elite ensued.

Discussion

On appeal, Elite raises its same argument presented in opposition to the partial summary judgment, that the Non-competition Covenant is legally sound and not overly broad. Due to the parties’ inability to anticipate where Elite’s business operations would “move and flow over time,” Elite claims that the 200-mile area was justified. Elite argues that La. R.S. 23:921 does not require that each parish or county be stated by name and that it was acceptable “for Appellant and Guillory to agree that the [200-mile radial linear] geographic limitation was specific.” In oral argument before this court, Elite further contends that the 200-mile radius was intended to reach from the location of any oil well site where Elite may be performing well services on and after the termination of Guillory’s employment. Elite also | (¡contends that the trial court erred in not finding La. R.S. 23:921(C) vague and ambiguous, in failing to reform the Noncom-petition Covenant and in dismissing Elite’s claims for declaratory, injunctive and liquidated damages.
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Duncan v. USAA Ins. Co., 06-363 (La.11/29/06), 950 So.2d 544; Laird v. Laird., 46,459 (La.App.2d Cir.6/22/011), 69 So.3d 1173; Pruitt v. Nale, 45,483 (La.App.2d Cir.8/11/10), 46 So.3d 780. Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. *865 Duncan, supra; Laird, supra. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action. The proceeding is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of 17factual support for one or more elements essential to the adverse party’s claim, action, or defense. La. C.C.P. art. 966(C)(2). The failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion. Laird, supra; Pruitt, supra; Upchurch v. State, ex rel. Louisiana Dept. of Transp., 45,761 (La.App.2d Cir.1/5/11), 57 So.3d 361, writs denied, 11-0362, 11-0363 (La.5/20/11), 63 So.3d 977.
On a motion for summary judgment, the district court cannot make credibility determinations or weigh conflicting evidence. In deciding a motion for summary judgment, the district court must assume that all affiants are credible. Laird, supra; Brooks v. Minnieweather, 44,624 (La.App.2d Cir.8/19/09), 16 So.3d 1244. The credibility of a witness is a question of fact. Laird, supra; Davis v. Delta Bank, 42,529 (La.App.2d Cir.11/7/07), 968 So.2d 1254, writ not considered, 07-2473 (La.2/22/08), 976 So.2d 1276.
In 2006, La. R.S. 23:921 (hereinafter the “Statute”) read in relevant part as follows:
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
(2) The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee’s contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.
[[Image here]]
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into *866 an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.
D. For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.
[[Image here]]
H. Any agreement covered by Subsections B, C, E, F, or G of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor’s failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.
 A noncompetition agreement is to be construed according to the general rules of contract interpretation. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La.6/29/01), 808 So.2d 294. A covenant not to compete contained in an employment agreement is disfavored in Louisiana because it may function to deprive a person of his livelihood. Such a covenant will be enforced only if it meets narrowly drawn criteria set forth in La. R.S. 23:291. SWAT 24, supra. To that end, La. R.S. 23:291(0 sets forth an [ exception allowing restrictions on competition. Action Revenue Recovery, LLC v. eBusiness Group, L.L.C., 44,607 (La.App.2d Cir.8/19/09), 17 So.3d 999. This exception, however, must be strictly construed and agreements con-fected pursuant to this provision must strictly comply with its requirements. SWAT 24 supra; Regional Urology, L.L.C. v. Price, 42,789 (La.App.2d Cir.9/26/07), 966 So.2d 1087, writ denied, 07-2251 (La.2/15/08), 976 So.2d 176. The lack of a geographical restriction in a non-competition agreement is fatal to the agreement and renders it invalid and unenforceable. Heart’s Desire, L.L.C. v. Edwards, 46,222 (La.App.2d Cir.4/27/11), 2011 WL 1630175; Action Revenue Recovery, supra; Sentilles Optical Services, Div. of Senasco, Inc. v. Phillips, 26,594 (La.App.2d Cir.3/1/95), 651 So.2d 395.
In this court’s recent ruling in West Carroll Health System, L.L.C. v. Tilmon, 47,152 (La.App.2d Cir.5/16/12), 2012 WL 1698145, we reviewed the sufficiency of the evidence by which an employer sought to enjoin its former employee under a non-competition agreement. The employee began new employment activities in health care in Morehouse Parish adjacent to the former parish of his employment, West Carroll. Morehouse was specifically named as a parish within the geographic restriction of the noncompetition agreement. This court first found that the employer met its initial burden by showing that it carried on a like business in More-house due to its sizable client base in that parish. Nevertheless, its territorial client-based interest in Morehouse was only part of the employer’s burden of proof under Section C of the Statute. The employer was also required to |indemonstrate the particular impact upon its business caused by the employee’s new employment activities. For this latter element of proof for the enforcement of a noncompetition agreement under the Statute, the employ *867 er’s evidence in Tilmon was insufficient, and the injunction action against the former employee was dismissed.
In the present case, while Elite seeks a permanent injunction, it did not seek preliminary injunctive relief. Nevertheless, Elite’s burden at trial to obtain a permanent injunction under the Noncompetition Covenant was called into question by defendants’ motion for partial summary judgment. Through its opposition to that motion, Elite was required to produce evidence sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). In view of the tests for an enforceable noncompetition agreement as expressed in Tilmon, we find that Elite failed in its opposition to defendants’ motion to show that it might prevail at trial.
First, Elite’s petition does not allege any details of the business it “carries on” in the 200-mile geographic limit. Second, the record contains very little summary judgment evidence detailing the nature of Elite’s business. Next, there was no evidence brought forth by Elite showing its business-interest in Bossier Parish regarding its clients and the number of jobs performed by Elite in that parish. Finally, with its business-interest in Bossier Parish unproven, Elite’s opposition to the motion for partial summary judgment does not demonstrate the particular impact on Elite’s business caused by defendants’ new Bossier venture. Accordingly, the trial |^court’s grant of the motion for partial summary judgment is affirmed on the insufficiency of Elite’s evidence.
Additionally, this insufficiency in Elite’s pleadings and opposition evidence further answers its other argument. Elite’s primary argument was that its 200-mile radius limit is an allowable specification of parishes or portions thereof so as not to offend the geographical requirement of the Statute. Nevertheless, even assuming the possibility for such specification of a geographic limitation under the Statute, Elite’s failure to meet its burden of proof in opposition to the motion for summary judgment likewise requires dismissal of its claim. There was no evidence presented demonstrating how Elite “carries on” its business throughout the 200-mile area which is the essential statutory test for establishing a geographical limit in the first place. Moreover, there was no savings clause in the employment contract allowing by reformation the 200-mile area to be reduced or limited to the immediate area surrounding Elite’s place of business such as Bossier Parish where it “carries on” like business activities. See SWAT 24, supra, pp. 308-309 and its review of AMCOM of Louisiana, Inc. v. Battson, 28,171 (La.App.2d Cir.1/5/96), 666 So.2d 1227, reversed, 96-0319 (La.3/29/96), 670 So.2d 1223.
As a final matter, the trial court’s dismissal of Elite’s claims for liquidated damages is also affirmed. Those penalties relate to the Noncompetition Covenant which was never shown to be enforceable. We express no opinion as to the propriety under the Statute of a liquidated damage provision in a noncompetition provision.

11¡>Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Elite.
AFFIRMED.

. Louisiana courts have held that non-solicitation clauses are also required to meet the requirements of La. R.S. 23:921.